EEOC v. Wal-Mart Stores, Inc. EEOC v. Wal-Mart Stores, Inc. Excuse me... I don't understand this punishment argument at all. You're going to really have to help me. What exactly is the burden on Wal-Mart of having an aid present at the job site? Especially when the aid is selected, carefully screened, trained, and paid for by someone else. Where in the record will we find any evidence at all that this arrangement harmed Wal-Mart or was burdensome in any manner? In actuality, the way I view this is that you had two employees for the price of one. And you did it for more than 16 years. And with very good reports on this individual. Your Honor, when I said punish, what I mean is subject Wal-Mart to liability under the Americans with Disabilities Act. I think it is hard to argue that if someone came tomorrow to Wal-Mart and said, you know, I can't steer traditional carts. I can't collect motorized carts. I can't answer basic customer service questions. But if I can... That's not Mr. Rayner. That's not Mr. Rayner. With all respect, it is, Your Honor. May I continue, please? Yes, Your Honor. Well, Popper Mall testified that Rayner could steer the carts himself. But he couldn't see oncoming hazards. That's at page 72 of Wal-Mart's separate appendix. And Rayner's mother testified that she used hand gestures indicating stop, go, left, and right  which indicates that she acted as his eyes and ears. And he then took in that information and steered. That's at pages 96 to 98 of that appendix. Your Honor, that is not... May I continue, please? Counsel, you are well advised not to try to talk over a judge's question. I know the technology makes this somewhat challenging, but the judge takes preference. This is the judge's time, and you should not attempt to interrupt a speaking judge. Is that understood? Yes, Your Honor. I was not attempting to interrupt. I apologize. Thank you, Judge Easterbrook, very much. Polizzi gave similar testimony that Rayner was a good cart pusher who could complete his job with minimal intervention from me, no hand, or nothing like that, and that she would simply gesture and sign to him and he would follow through. And that's at page 16. So why would a reasonable jury not be able to conclude from that testimony that Rayner could steer? Let me explain. My biggest problem with your brief, with Walmart's brief, is that it simply does not come to grips with the evidence presented at trial, and it doesn't acknowledge that there were fact questions that were decided against you, decided against the company. May I answer your question, Your Honor? Please. I'm going to go through each job coach because I think your recounting of that evidence is, with all respect, entirely incomplete and inaccurate. Well, if it's inaccurate, it would not be in the appendix, would it? If I may, Your Honor, if I could explain. With regard to Mr. Kopernol, who was the primary job coach, if you take a look at the entire string of questions, and that's available on Appendix 71 through 73, it becomes very clear that what he's saying is that Mr. Rayner is unable to steer the entire line of carts safely. And the exchange goes on for a couple of pages, and it becomes so clear that that is what Mr. Kopernol is saying, that the judge cuts off the question and says, I think you've established that he did not steer. So how many accidents did he have in 16-plus years? He did not have accidents because every single time he did the job, every single time, the job coach steered. Mr. Kopernol said that. Ms. Slatt said that. Ms. Pelosi said that. Every single time. Ms. Pelosi said that even on the easiest days, she had to steer. When they are talking, if they are talking about... Enter page 72. Kopernol testified that Rayner, quote, could steer the carts himself. But he could... ...oncoming hazards. That's exactly right. And if you keep reading, it becomes clear that what he's saying is that he could physically steer, but he couldn't do it safely because he wouldn't stay focused. And that's why Mr. Kopernol said he had to steer every time for it to accomplish safely. And if you read on to 73, it becomes so clear that Mr. Kopernol is saying that, that the district judge cut off the questioning and said, I think we've established that he could not steer. It was unambiguous, undisputed, that Mr. Kopernol was saying by page 73 that Mr. Rayner could not steer, which is why I think EOC's primary argument is that somehow Mr. Rayner was attending traditional carts himself by using his job coach as a tool. But with all respect, that doesn't make a whole lot of sense. That would be like saying that someone is driving a car because they're pressing the gas pedal while somebody else uses the steering wheel. But even if Your Honours don't agree with me or Your Honour does not agree with me with regard to traditional shopping carts, I think that this court's cases with regard to particularly heavy packages and package lifters makes clear that we were entitled to judgment and that the jury's verdict needs to be overturned based on Mr. Rayner's undisputed inability to do anything with motorized carts and scooters. Now, Mr. Rayner is a cart attendant. One of his essential functions is to attend to carts. It was undisputed that there was a category of carts- as if it were a greed fact- that an essential function of the job was dealing with motorized carts. The district judge concluded that that was a jury question which had been argued to the jury but resolved by the jury against you. It seems to me you can't simply assume your own position, but you need to explain why there was not sufficient evidence to allow the jury to resolve that question. Thank you, Your Honour. I think that is resolved by this court's cases in Vargas and Kutaska. In those cases, we had package handlers or mail carriers that could not lift a very small category of packages or mail bags. It was a small category. It happened rarely. This court in both circumstances said that, look, this is a package handler, this is a mail carrier. As a matter of law, that means that lifting those heavy packages... I must say I have great difficulty with the concept that any particular function is part of any particular job as a matter of law. Employers can largely define jobs the way they want. Trying to figure out which functions are essential to a particular job sounds like an almost quintessential question of fact. So I wish you would address the ground on which you lost this case. That is, the jury resolved the question against you and the district judge held that there was evidence sufficient to permit the jury to do that. Yes, Your Honour. So my point is that this court, over and over again, including the package handler case, has held... You're not going to get anywhere talking about package handler cases. You have to talk about this job at this store. Okay, Your Honour. So with regard to mechanical carts, it was undisputed that Mr. Reyna was the only cart attendant on duty for two hours of his shift. It was undisputed that motorized carts are the kind of carts that cart attendants attend to. And it was undisputed that every time there was a motorized cart left in the lot during Mr. Reyna's job, his job coach got that cart. It was undisputed that... But Mr. Shetland, what difference does that make? I feel like you're arguing to a jury that you're making... You know, the judge... Walmart's proposed instruction to the jury basically asked the jury to define what are the essential functions. They rejected that argument. They rejected the argument that it was an essential function that he drive one or two motorized carts per month, which I think were the facts, into the store in the two-hour window that he was there by himself. And, you know, I'm... With Judge Roldner, with Judge Easterbrook, that I'm having trouble here understanding your argument as to why no reasonable jury could have found that in this case based upon the facts that were in front of them. Well, Your Honour, it didn't convince Judge Easterbrook. But our position is that when you have a cart attendant, the essential functions defined in his job description are to attend to carts, and there's no dispute motorized carts is one. This court in Bassett said that it is not the court's responsibility to second-guess the employer's job description and employer's judgment as to what are essential functions. Then explain to me why the defendant's proposed instruction number 15 says not all job functions are essential. Essential functions are a job's fundamental duties. In deciding whether a function is essential, you may consider the reasons the job exists, the number of employees, etc. You is referring to the jury. Why didn't your proposed instruction say, we, Walmart, will instruct you as to the essential functions, and you must accept them as a judge would instruct the jury on the matter of law? It seems to me that Walmart told the jury that the jury should decide the essential functions. And that's what the judge instructed, and then the judge said, look, there were sufficient facts that a jury could decide that driving a motorized cart into the store is not an essential function. Distinguishable from the cases you cited, including Cossack, where the evidence was that the person who was lifting the 15 pounds or 75 pounds was the only handler at the facility. Your Honor, I'm glad you made that last point. The undisputed evidence in this case is that for two hours of his shift, he was the only car attendant on duty. The only reason those cars did not languish in the lot was because his job coach did it for him. So it would be indistinguishable from a situation in Kutowska where if the package would sit there for a couple of hours until someone else came... I really wish you'd address my colleague's question. As Judge Kirsch pointed out, Walmart agreed to jury instructions under which this issue was resolved by the jury. You've waived any objection to those jury instructions, but now you're contradicting the jury instructions and saying that whatever Walmart puts in a job description, that's, as a matter of law, essential. It is perhaps a legal question, but how can Walmart put an issue to the jury and now contradict its own jury instruction? Your Honor, we're not saying that it's conclusive without any opportunity for rebuttal. What I'm saying, Your Honor, is that this Court has decided multiple cases. The vast majority of these cases... I wish you would address my question and Judge Kirsch's rather than talk about some other issue. You have to address the circumstances under which a litigant can propose a jury instruction, receive an adverse verdict from the jury under that instruction, and then contradict the instruction in the Court of Appeals. When is that permitted? Your Honor, I did not see any arguments from my friend on the other side that any of our arguments in this case contradict the jury instructions. It's right there in the statute that the... You have just had questions from all three members of this Court about that issue. You are well advised to address it. Your Honor, I believe that the jury instructions were consistent with this Court's case law. And this Court's case law, applying those same standards, has repeatedly said that this issue of essential functions can be decided as a matter of law. If this case should not have gone to a jury under this Court's... You are just not addressing the question of the circumstances under which somebody who proposes a jury instruction can make an appellate argument based on the premise that the jury instruction is incorrect. Now, it may be that's because you don't have any potential authority. But you need to address it, because without addressing it, you cannot hope to prevail in this appeal. Well, Your Honor, I certainly understand what Your Honor is saying with regard to motorized carts. So then I will, with respect, return to the issue of traditional shopping carts. Before you do, I've just got to get this question in, because it really has been bothering me. And I'm sorry, I'm taking you somewhere else. But on the question of injunctive relief, it appears now that there is a second case, also in Wisconsin, where a jury took issue with Walmart's discriminatory discharge and failure to accommodate disabled employees, the one with Down syndrome. And I understand, you know, that Walmart has claimed the conduct in Raina's case was a one-time occurrence. Does the second case change that calculus? In that case, the jury gave 125 million impunitives. Your Honor, I would like to answer that question, and I'd like to reserve the balance of my time for rebuttal. That case was not in front of the district judge when he issued his decision denying injunctive relief here. We are here on an abusive discretion standard, so therefore that post-decided decision can't be part of the analysis. Further, in that case, we'll be seeking... That doesn't respond to my question. My question is, you have maintained that this is, you know, a one-off of some sort. I mean, is it still a one-off? Yes, Your Honor, our position is a one-off. We will be moving under Rule 59 to set aside that verdict. Further, that case has completely different facts that have to do with the adjustment of a work schedule. This is a case involving the denial of a permanent job coach, something that no court in this country, as far as we can tell, has ever required of any employer. If I may, I would like to reserve the balance of my time. Certainly, counsel. Ms. Coleman. May it please the court, Gail Coleman for the EEOC. And this is horrible. I'm doing it again. Forgive me. But just to follow up, I've been wondering about this. Is the EEOC seeking an injunction in the second case, the one that's referenced at page 62, footnote 12? Yes. The Marlowe Space case? Yes. And are you aware if any of the same Walmart decision-makers were involved in that case? No, I'm not aware of that. But that brings us to the point that the Accommodation Center, which is one of the entities that dropped the ball here with Mr. Reyna, they operate nationally. And that is their sole function, is to handle reasonable accommodation requests. In this case, Mr. Reyna sought reasonable accommodation, and the Accommodation Center sat on that request for eight months. They did nothing until after Mr. Reyna filed a charge with the EEOC. He filed a charge with the EEOC, and then they had a meeting, Walmart had a meeting, said they'd never take him back. But the Accommodation Center, whose sole purpose is to process these requests, didn't. They didn't do it for an employee who had been working for 16 years and receiving uniformly positive performance reviews. Because even for him, they didn't take this seriously. So there is every reason to believe that there is a possibility that discrimination could recur in the future. Also, the discrimination here went beyond Sherelle. Repka was involved. One of her jobs was to ensure compliance with the ADA, to make sure that employees followed the law and followed Walmart's policies, yet she was part of the problem. And then, again, Coffin, who was involved in processing requests for the Accommodation Center. The policies and procedures that Walmart says will prevent discrimination in the future are, as far as the record shows, the same policies and procedures that were in place when the, when Walmart discriminated against Mr. Reyna. They did not prevent the discrimination against him. That makes this case, like Brusso, which is a case where this court reversed the denial of injunctive relief. Walmart continues to demonstrate that discrimination is possible to recur by continuing to misrepresent what it did initially after they told Ms. Slatt that Mr. Reyna could not come back. This was eight months later after the EEOC-sponsored meeting. They then sent a letter, drafted by their lawyers, saying that they had asked her for clarification eight months ago. She hadn't responded and any delay was her fault. But she testified that nobody had ever asked her for clarification. And all of the testimony supports that. Mr. Shirell agreed that he never even called the doctor, whose name and phone number were on the form, saying that there was a need for an accommodation. Mr. Coffin, whose practice was to seek additional information if needed, the very same day he received a request, never, ever sought clarification. So the jury seems to have believed that Walmart lied about that. And, again, it supports the idea that there is a probability, a possibility that discrimination may recur. It is true that the grant or denial of injunctive relief is reviewed for abuse of discretion. But as the EEOC explained in our brief, an abuse of discretion occurs if the analysis rests on legal error. And here the court did rely on two legally erroneous considerations in denying injunctive relief. First, it relied on its assessment that nobody had any discriminatory animus. But as Walmart does not dispute, a failure to accommodate claim does not require discriminatory animus. Walmart cannot and does not dispute that this is one of the factors that the district court relied on. Additionally, the district court relied... It sounds, counsel, with respect to the injunction, it sounds in your brief, Red, like you're saying, whenever the EEOC wins a case on the merits, it's entitled to an injunction as a matter of law. If the defendant violated the statute, then it should be enjoined, as well as ordered to pay damages. That sounds like a denial that the district court has any discretion at all. Is that, in fact, what you're arguing? No, that is not what we're arguing. Well, if you're not arguing that, then I don't understand the argument, your contention that the district judge made a legal error. Because if the district judge has discretion about whether to issue an injunction, why can't the judge consider, as part of exercising that discretion, whether there was intentional wrongdoing? You say it's a legal error because the statute doesn't require intentional wrongdoing, but it can easily be part of an exercise of discretion. Well, okay, yes, it is true that the judge has discretion. In AutoZone, of course, this court said the employer has the burden of proving that discrimination is unlikely to persist. If the court were to find that, yes, Walmart still carried discriminatory animus affirmatively, then that would be a factor in favor of injunctive relief. Exactly. The fact, yes. And if it's a fact in favor of injunctive relief, the nonexistence of that fact disfavors injunctive relief. That's what the district judge said, and you're now here saying that was a legal error. I don't see how Fact A can support injunctive relief, but the nonexistence of Fact A must be deemed irrelevant. It's either relevant or it's not. Well, respectfully, if there is discriminatory animus, although that is not an element of a failure-to-accommodate claim, I think everybody would agree that it makes it more likely that there will be a failure to accommodate. But if there is no discriminatory animus, there could be a failure to accommodate anyway. People could fail to accommodate because they believe there's no point, it wouldn't work because this person is too disabled, or because it would be insulting to this person to offer something else. They could even have some, not only benign, but what they believe is a good-faith reason to just respect this person and not suggest that there's anything that they can't do that somebody else can do. They don't want to make them feel bad, but they're just not going to give them an accommodation. That's still a failure to accommodate. That's still an ADA violation. So in that respect, yes, it is legal error to consider the absence of an element that is not required to establish a violation. The other piece of legal error that the district court relied on was its assessment that Walmart had not engaged in a pattern or practice of discrimination. This court held in AutoZone that an injunction is appropriate without a pattern or practice. Pattern or practice is a legal term which means a standard operating procedure. Discrimination does not have to be Walmart's standard operating procedure. Walmart does not dispute that legal principle. What it says is that this was just a fleeting reference. The court said it, but it didn't really mean it. But in fact, the court said there was no pattern or practice, and in its very next sentence it said, therefore, this incident involved unique circumstances. There really is no way to read that opinion and say the court did not rely on the absence of a pattern or practice. Would you agree that pattern or practice is a factor that the court can consider, even though you say it's not a necessary element? Again, as I said with discriminatory animus, if there is a pattern or practice, absolutely that makes it likely. So it's not a factor if there isn't, only if there is? Well, again, there can certainly be... And discrimination could possibly persist in the future, which is the legal standard, without a general widespread policy of discrimination. If there is such a policy, it makes future discrimination more likely. But if there isn't, and you have these other factors, for instance... Right, but that's not legal error. What you're describing is not legal error. Those are factors that the district court can consider. The presence of a factor makes future discrimination more likely, where the absence of a certain factor may make future discrimination less likely. So a factor that a court considers works both ways. Either the court can consider the factors or the court can't consider the factors, I would think. So if pattern and practice can be considered if it exists, it can be considered if it doesn't exist. Would you agree with that? No, I would not, and that's for the same reason... You see that your argument comes across as heads we win, tails you lose. If the factor is in our favor, we win. If the factor is not in our favor, we win. You might find judges resistant to that style. I can certainly see how you would interpret it that way, but the EEOC's position is that it is legal error to consider factors where if they do not exist, that would not actually, as a legal basis, be a reason to deny an injunction. This court held in AutoZone that there is no need to show a pattern or practice. It is clear that a failure to accommodate can occur without discriminatory animus, and it is impossible to separate out the court's considerations of these factors from the rest of its analysis. We can't know how heavily they influence the court's decision. I'm sorry, did you have a question? And so we believe this is legal error warranting reversal. We also would note that the district court, in explaining the facts that, or what it saw the facts from the record as in denying injunctive relief, ignored compelling facts of systemic failures. As we discussed, the discrimination here went beyond Sherrill, although the court really pinned it on him. But there was RAPCA and there was Coffin. There was the Accommodations Center, Walmart's experts for granting reasonable accommodations. That was a major systemic failure, as was the failure of Walmart's policies and procedures. So had the court assessed all of the evidence, it is our view that it would have come out differently. It took a very different view of the evidence, which contradicted the view the jury took, and for that reason as well, we believe that the court erred by denying injunctive relief. Our view is that if this court agrees with us and remands for the district court to reassess its view of injunctive relief with respect to its analysis of specific provisions that it denied, we have laid out our objections to three major provisions. We would encourage the court to look at the whole thing anew, keeping in mind the systemic failures. With respect to the Obey the Law injunction, it was legal error not to analyze whether the request was narrowly tailored and therefore falls within what this court says is an exception to the general rule that Obey the Law injunctions are disfavored. Certainly, this court has routinely upheld Obey the Law injunctions when they're narrowly tailored. Did that in AutoZone, in Lona of Hungary, Gurney Inn. We also believe that the district court erred in its analysis of our request to consider a job coach where needed. The district court, and again Walmart repeats the same error, misunderstood our request and said that we wanted a job coach considered everywhere in all circumstances. That's just not the language of the request that we made. And then with respect to the checklist and training, that was neither overbroad nor redundant. The existing procedures did not work. The checklist that we proposed would have been limited to reasonable accommodation procedures. And then the training that we requested first would be live and, therefore, likely to be more effective than the training that did not work already. And it would cover the ADA with a special emphasis on reasonable accommodation, including job coaches and the duty to engage in the interactive process, which Walmart did not do here. And that's a precursor to the whole reasonable accommodation analysis. If the court has no further questions on injunctive relief, I would like to turn to the question of punitive damages. Walmart has argued that novelty of a legal theory is a freestanding defense to punitive damages, and that is just not the law. Kolstad says that malice and reckless indifference pertain to the actor's state of mind. And what is your best evidence of malice or reckless indifference? I believe the best evidence of, well, more likely reckless indifference than malice could be either, is that Walmart knew it had a duty to engage in an interactive process if it chose to reject the accommodation that an employee requested. It knew the accommodation center certainly is charged with knowing the law, and that is expressly spelled out in Walmart's policies. Rather than receiving Mr. Reyna's request and saying, we just don't think it's reasonable to have a full-time permanent job coach, let's talk about what else might be reasonable. They did nothing. For eight months, they did nothing. And that a jury, the jury, did find constituted malice or reckless indifference. The jury apparently credited the EEOC's evidence that Shirelle and Repka lied when they said that they saw Kopernil doing 95% of the job. Kopernil testified, I couldn't do that job. It's way too hard physical labor. Mr. Reyna's 20 years younger than me. He's stronger. I just couldn't do it, pushing all those carts and pushing them uphill. A jury could find malice or did find malice or reckless indifference, apparently crediting testimony that Shirelle told Ms. Slack, don't call me, I'll call you, and then didn't call. Walmart cut off Mr. Reyna's access to the employee helpline immediately after he filed a complaint of discrimination. Again, they ignored the procedures that Repka was in charge of making sure that they followed. His request languished in the accommodation center for eight months until after he filed an EEOC charge. And then Walmart sent a letter falsely blaming Slack for the eight-month delay and continues to make that argument here on appeal. So for all of these reasons, it was reasonable, the jury reasonably found, malice or reckless indifference based on these factual matters. If there are no further questions, the EEOC will rest on its brief. We urge the court to affirm the judgment of liability and the imposition of punitive damages and to vacate the denial of injunctive relief and remand for further proceedings on the EEOC's motion. Thank you, counsel. Anything further, Mr. Saitlan? Yes, Your Honor, just quickly on punitive damages and then a word on steering traditional carts. On punitive damages, this court quoted Kolstad in the clearest possible terms of mandation rule that where, quote, the underlying theory of discrimination under the ADA is novel or poorly recognized, there cannot be punitive damages. There cannot be recklessness or malice. Here, there has been no court in this country's history, as far as we can determine, as far as EEOC has determined, that has ever held that an employer has to provide a full-time job coach. Now, back on traditional shopping carts, that is not an issue about the jury determining what is essential functions. I would respectfully ask Your Honors to take a look at the testimony that we highlighted in our brief. And in particular, Mr. Kopernel's testimony. Judge Roedner quoted what Mr. Kopernel said at one point. We then had a follow-up colloquy. So the question was, he couldn't steer shopping carts or invoke upcoming hazards. He might not see them. So in other words, he couldn't do it in a way without creating an accident, for instance. Right. And then this goes on for another page and a half. Did he create an accident? Did he ever create an accident? No, because the job coaches did all of the steering for him for 16 years. He did not have the capacity to do the steering. This court's cases are clear, that if a second individual has to do another aspect of a job, then there cannot be liability under the ADA. And again, the conversation goes on to the next page. And it is so clear, so undisputed that he could not steer. Judge Peterson, who's fairly presided over this jury, said, I think we covered this. He couldn't steer the carts. It was not in doubt in the mind of anyone in the courtroom that there was no evidence that he couldn't steer the carts. Really, the only dispute was whether Your Honors are willing to accept the legal premise that someone steers carts when they have someone else doing it for them. And that I would respectfully submit is not something that can be affirmed, even under the, the, the standard reviewing. Thank you counsel. Forgive me. Walmart did not provide the coach. Raina and Medicaid provided the coach. Your Honor, may I respond? As long as the judge is talking, the counsel can respond. Yes, Your Honor. The question is whether Mr. Raina could perform the essential functions himself, whether the person performing the essential functions is hired by Walmart or a third party is legally irrelevant to the essential functions analysis. It may be relevant to the undue burden analysis, which we have not appealed. All right. We, we have your position. Thank you very much.